MURDOCK, Judge.
Ioana Naumescu Preda, the mother, appeals from a judgment of the Jefferson Circuit Court, arguing that the trial court abused its discretion by awarding Adrian Preda, the father, additional visitation with the parties’ two children, that it erred in its award of child support, and that it abused its discretion by denying her request for attorney fees.
The parties married in 1992 in Romania. Soon after their marriage, the parties had a son. In 1994, the parties moved to New York, where the mother had been accepted into a hospital residency program. Because of financial constraints, the parties’ son remained in Romania with the maternal grandparents for approximately six months. Thereafter, he spent approximately four to six months each year in the United States with his parents and the remainder of the year in Romania with the maternal grandparents.
In 1995, the parties had a daughter; the daughter lived with the parties for approximately one year and then moved to Romania to live with the maternal grandparents. Also in 1995, the mother’s residency program ended and she accepted employment as a psychiatrist in Texas. The father remained in New York. After the mother moved to Texas, the son moved from Romania to live with her, though he apparently continued to spend a considerable amount of time in Romania as well. The parties’ daughter remained in Romania, though she visited the mother and the father in the United States.
In 1998, the mother and son moved to Birmingham; the daughter also moved at that time from Romania to Birmingham to live with the mother. Also in 1998, the father filed a petition for a divorce in Romania. The parties were divorced pursuant to a judgment entered by a Romanian court in October 1999. The judgment awarded custody of the children to the mother and ordered the father to pay the mother child support equal to approximately $30 per month in United States currency. The judgment made no provision for visitation by the father. However, in July 1998, the mother had executed an affidavit which stated that, upon the entry of a judgment of divorce, the father would *619 have visitation “every second and fourth Sunday and Saturday of the month” and “during the scholastic holidays for a period of up to half of the holidays, and up to four weeks of the summer holidays.”
In June 2001, the father filed a petition to enroll the parties’ Romanian divorce judgment in the Jefferson Circuit Court. He attached to his petition a certified copy of that judgment, translated into English. In his petition, the father also requested that the trial court modify the Romanian judgment by awarding joint legal custody of the children to the parties and by awarding to him “standard out-of-state” visitation with the children. The mother filed an answer to the father’s petition, contesting his requests for joint legal custody and for additional visitation. The mother also filed a counterclaim, requesting, in part, that the trial court increase the father’s child-support obligation and award her attorney fees. The mother did not contest the enrollment of the Romanian judgment.
In December 2001, the father filed a motion alleging that the mother had refused to allow him to visit with the children during the Christmas holidays. The father requested that the trial court order the mother to allow him to bring the children to Connecticut for Christmas visitation. The mother denied the father’s allegations. Thereafter, the trial court entered an order granting the father the right to visit with the children in Birmingham for portions of five days during the Christmas holidays. However, because of the father’s work schedule, he was only able to visit with the children on some of the scheduled days.
The trial court held a hearing in January 2002, at which it received both ore tenus and documentary evidence. Thereafter, the trial court entered a judgment awarding the father visitation during the 2002 spring-break holiday, during the 2002 Thanksgiving and Christmas holidays, and for three weeks during the summer of 2002. The judgment also awarded the father the right to exercise “reasonable visitation” when he was in Birmingham, provided he gave the mother 48 hours’ notice that he wanted to visit with the children and that the visitation lasted no longer than 48 hours. The trial court ordered that the father’s 2002 spring-break visitation be conducted within 100 miles of Birmingham. It also ordered that, during the father’s 2002 spring-break visitation, the father, the mother, and the children participate in family counseling with Dr. Elizabeth Cates, a clinical psychologist who had examined the children and who had testified at the trial. Further, the trial court ordered that five days of the father’s three-week summer visitation be conducted within 100 miles of Birmingham.
.The judgment provided that beginning in 2003 the father’s visitation rights would include visitation for six weeks each summer, visitation each Christmas for approximately one week beginning on December 26 of each year, visitation during the spring-break holiday of odd-numbered years, visitation during the Thanksgiving holiday of even-numbered years, and reasonable visitation when the father was in Birmingham, provided he gave the mother 48 hours’ notice that he wanted to visit with the children and that the visitation lasted no longer than 48 hours.
In regard to the modification of the father’s child-support obligation, the judgment stated:
“[T]he child support ordered to be paid by the [father] to the [mother] for the support and maintenance of the minor children of the parties be and it hereby is increased to [$750] per month effective February 15, 2002. The child support is not set pursuant to Rule 32 *620 Child Support Guidelines, Rules of Judicial Administration due to the travel costs associated with [the father’s] exercising his visitation with the minor children.”
The trial court denied the mother’s request for attorney fees, and it denied all other requested relief.
The trial court amended its judgment to clarify that the father’s visitation during the 2002 Thanksgiving and Christmas holidays must be conducted within a 100-mile radius of Birmingham and to clarify certain other aspects of visitation. The mother appealed.
The mother first argues that the trial court abused its discretion by awarding the father “excessive visitation” with the parties’ two children.[1] The mother’s rendition of the evidence in her brief on appeal to this court is basically an attempt to have this court reweigh the evidence, based on all evidence that is potentially favorable to her, and to ignore substantial ore tenus evidence that supports the trial court’s determination as to the father’s visitation rights. There was evidence that the father had visited with the children each year since 1995 and that he talked to the children on the telephone once a week for about one-half hour. The mother emphasizes the limited nature of the father’s visitation with the children; however, there also was evidence indicating that the father had requested additional visitation with the children each year from 1997 through 2001 but that the mother had refused to permit him additional visitation. There was also evidence indicating that the mother had interfered with recent attempts by the father to visit with the children.
At trial, the mother requested that, of the children’s 12-week summer vacation, the father be awarded 4 weeks of visitation so that she and the maternal grandparents could each have 4 weeks of summer vacation with the children. Thus, the mother’s argument is essentially about whether an additional two weeks of summer visitation should have been awarded to the father in lieu of the children’s spending additional time in the summer with the maternal grandparents. Dr. Elizabeth Cates, a clinical psychologist who examined the children at the mother’s request, testified as follows:
“It’s my opinion because of the instability that [the children] have experienced in their childhoods that they would be best served to have a period in which they get to know their father better and are able to see him as frequently as possible. I think for at least some period of time that would be best served with him seeing — coming to see them here near home. I think that after they become a little bit more secure, then traveling to Connecticut shouldn’t be a problem.
“Another issue, however, is their strong attachments to their grandparents. They have spent so much time with their grandparents that they are as bonded to their grandparents, it appears, as parents. So I think it is important that they spend' — that they are able to remain — you know, to continue contact with them also.”
Dr. Cates further testified that a three-week or six-week visitation period with the father should not adversely affect the children’s relationship with them grandparents *621 “unless there is some reason the grandparents can’t come here and the children would have to go there.”
There was evidence indicating that the maternal grandmother, who had been the children’s primary caregiver in Romania, had visited the children in Birmingham on a regular basis and that, in the past, she had spent “three or four months a year at [the mother’s] place” and had helped the mother care for the children. The maternal grandmother also testified that she planned to visit the children in the United States on a yearly basis. Further, the mother admitted that there were times other than the summer when she could take the children to Romania, and the father testified that he was willing to take the children to Romania during a portion of his visitation.
Based on the foregoing, and on other evidence contained in the record, a further discussion of this issue is unnecessary. We cannot conclude that the trial court clearly abused its discretion as to the amount of visitation awarded to the father.
The mother next argues that the trial court erred as to its child-support award. Based on the CS-41 income statements submitted by the parties and the CS-42 child-support guideline statement prepared by the trial court, see Rule 32, Ala. R. Jud. Admin., the parties’ combined gross income was $9,834 per month and the parties’ combined basic child-support obligation was $1,532 per month. Under the child-support guidelines, the father’s portion of the child-support obligation was approximately $1,057 per month. As noted above, the trial court ordered the father to pay $750 in child support and specifically stated that “[t]he child support is not set pursuant to Rule 32 Child Support Guidelines, Rules of Judicial Administration due to the travel costs associated with [the father’s] exercising his visitation with the minor children.”
The mother makes several arguments regarding the trial court’s child-support calculation that we have concluded are without merit and that we will not discuss. However, for the reasons hereinafter stated, we conclude that the trial court abused its discretion by deviating from the Rule 32 child-support guidelines.
“Actions concerning child support, although guided by the mandatory application of Rule 32, are still committed to the sound discretion of the trial court, and its decision on such matters will not be disturbed on appeal absent an abuse of discretion.” Hamilton v. Hamilton, 647 So.2d 756, 758 (Ala.Civ.App.1994); see also State Dep’t of Human Res. v. J.B., 628 So.2d 889 (Ala.Civ.App.1993). Rule 32(A), Ala. R. Jud. Admin., states, in part:
“There shall be a rebuttable presumption, in any judicial ... proceeding for the establishment or modification of child support, that the amount of the award which would result from the application of these guidelines is the correct amount of child support to be awarded. A written finding on the record indicating that the application of the guidelines would be unjust or inappropriate shall be sufficient to rebut the presumption if the finding is based upon:
“(ii) A determination by the court, based upon evidence presented in court and stating the reasons therefor, that application of the guidelines would be manifestly unjust or inequitable.
“(1).... Reasons for deviating from the guidelines may include, but are not limited to, the following:
*622 “(b) Extraordinary costs of transportation for purposes of visitation borne substantially by one parent;

“The existence of one or more of the reasons enumerated in this section does not require the court to deviate from the guidelines, but such reason or reasons may be considered in deciding whether to deviate from the guidelines.”

(Emphasis added.)
The father had requested that the trial court deviate from the child-support guidelines based upon the costs of return-trip airline tickets for the children from Birmingham to Connecticut and his rental car and hotel expenses when he had to come to Birmingham to retrieve and return the children during extended visitations. He also requested that the trial court consider his long-distance telephone expenses for one hour of telephone visitation each week.
The father offered an exhibit listing his anticipated expenses for the children’s airfares ($2,000 per visitation), his automobile rental expenses and hotel expenses for a two-day stay on each trip to Birmingham to retrieve and return the children ($210 per visit), and his long-distance telephone expenses for one hour of telephone visitation each week ($40 per month, $480 per year). The expenses totaled $7,110 or $9,320, depending on whether he had three or four extended visits with the children each year. However, the father admitted that his estimated airline ticket price was based upon an estimate of approximately $450-$500 per adult ticket and that, in the past, he had obtained airline tickets for the children for as little as $271 per round trip.
At the time of the trial, the father was 35 years old and he had not remarried. His gross income from Yale University was approximately $6,751 per month or $81,012 per year. The mother was 34 years old. She resided in Jefferson County, along with the children, but she had remarried and had two children by her current spouse as well. In addition to caring for her four children, the mother worked part-time, up to 20 hours per week, as a psychiatrist for Psychiatry Associates, P.C. The mother had a gross income of approximately $3,083 per month or $36,996 per year.
The difference between the amount of the father’s child-support obligation as provided by the child-support guidelines— $1,057 — and the child support the trial court ordered the father to pay — $750— was $307 per month or $3,684 per year. Although this was a smaller adjustment than the father requested, the father offered no evidence that he could not afford to make the full child-support payment required by the application of the child-support guidelines; he offered no evidence that the amount of child support required by the guidelines would substantially affect his ability to pay his living expenses or other legal obligations; and he offered no evidence that the amount of child support required by the guidelines exceeded the needs of the children. Compare Hamilton, 647 So.2d at 758 (stating that “[a] parent’s inability to pay child support is a proper basis for deviating from the guidelines” and holding that deviation from the guidelines was warranted based on “substantial hardship” where the mother’s gross monthly income was $840, she had recently moved into an apartment with a rent of $430 per month, and her prior rent had been only $120 per month); accord State ex rel. Whitlock v. Bottoms, 651 So.2d 1 (Ala.Civ.App.1994); Hannah v. Hannah, 582 So.2d 1125 (Ala.Civ.App. 1991). See also Comment, Rule 32, Ala. R. Jud. Admin. (“[t]he guidelines will provide an adequate standard support for children, subject to the ability of their parents to pay, and will make awards more equitable *623 by ensuring more consistent treatment of persons in similar circumstances”) (emphasis added). We further note that the mother offered undisputed testimony that, despite having substantially less gross income, she had paid travel expenses for thq children when they visited Romania and had paid her mother’s travel expenses when the mother came from Romania to assist with the children.
Based on the foregoing, we conclude that the trial court abused its discretion by deviating from the child-support guidelines because there was insufficient evidence that the application of the guidelines was “manifestly unjust or inequitable” under the particular facts of this case. The trial court should have established the father’s child-support obligation based on the application of the child-support guidelines.
The mother next argues that the trial court abused its discretion by denying her request for attorney fees. “[A] trial court may award an attorney fee in a child support modification proceeding; the decision to award such a fee and the amount of the fee are within the discretion of the trial court.” Curry v. Curry, 716 So.2d 707, 710 (Ala.Civ.App.1998). “In determining whether to award an attorney fee, the trial court should consider the conduct of the parties, the financial circumstances of the parties, and the outcome of the litigation.” McClelland v. McClelland, 841 So.2d 1264, 1272 (Ala.Civ.App.2002). We note that the father was successful as to his petition for additional visitation, but he testified that he only filed his petition because the mother would not permit him to have more visitation with the children. Likewise, the mother was successful in seeking an increase in the father’s child-support obligation, although the father testified that, as of the date of the trial, he had paid her approximately $10,000 in child support since the divorce, instead of only approximately $840 that he could have paid pursuant to the Romanian judgment. At trial, each side sought a $10,000 award of attorney fees from the other party. Based on the evidence before the trial court, we cannot conclude that the trial court abused its discretion by denying the mother’s request for attorney fees.
Those portions of the trial court’s judgment increasing the father’s visitation and denying the mother’s request for attorney fees are affirmed. That part of the judgment awarding child support based on a deviation from the Rule 32, Ala. R. Jud. Admin., child-support guidelines is reversed, and the cause is remanded for the entry of a judgment applying those guidelines.
The mother’s request for the award of an attorney fee on appeal is granted in the amount of $2,000. The father’s request for the award of an attorney fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.

. The mother did not argue at trial and does not argue on appeal that there had not been a material change of circumstances warranting a change in the father's visitation rights. See McQuinn v. McQuinn, 866 So.2d 570 (Ala.Civ.App.2003). Instead, both parties argue merely as to whether the visitation awarded is in the children’s best interests.