THOMAS, Judge.
Stacey Mallette Hein (“the mother”) and Abel Fuller (“the father”) married in 1999. They separated in November 2004, while the mother was pregnant with twins, and she moved to Ontario, Canada. The par *963 ties’ children were born in Canada in March 2005.
In August 2005, the father sought a divorce from the mother in Alabama; in his divorce complaint, the father requested that the Madison Circuit Court (“the trial court”) determine the paternity of the children because he suspected that he was not the father of the children. The father also requested that, if his paternity was established, the trial court determine child-custody and child-support issues. The mother appeared specially in the Alabama divorce action; although the mother conceded that the trial court could divorce her and the father, she asserted that the trial court could not enter a judgment addressing child custody or child support because it lacked jurisdiction to do so. The trial court agreed and entered a judgment that divorced the parties and incorporated a settlement agreement addressing property issues; the judgment did not address paternity, child custody, or child support. Meanwhile, the mother sought and received a judgment in Canada in which the father was ordered to pay child support. The Canadian judgment awarded the mother custody of the parties’ children but awarded the father no visitation. The father had moved to dismiss the Canadian action because, he had argued, the Canadian court lacked jurisdiction over him; he was unsuccessful.
The mother attempted on two occasions to register the Canadian judgment in Alabama. Neither attempt resulted in a registration of the Canadian judgment. In 2007, an Alabama court declared that the Canadian judgment was void, presumably on the ground that the father was not properly served with the complaint that initiated that action. The mother did not appeal from that judgment.
In July 2009, the mother filed in the trial court what she styled as a petition for modification, seeking modification of the 2005 Alabama divorce judgment. She requested that the trial court modify the Alabama divorce judgment to address the child-custody and child-support issues that it had not resolved; she also specifically sought retroactive child support, an order directing the father to name the children as beneficiaries of a life-insurance policy on his life, an award compensating her for her travel expenses, and an attorney fee. The mother did not attempt to register the Canadian judgment a third time or seek a modification of its child-custody or child-support provisions, having twice failed in that endeavor and having received a determination that the Canadian custody and child-support judgment was void and unenforceable. As a result, we conclude that she was seeking an initial custody determination and an initial child-support order regarding the children as a modification to the 2005 Alabama divorce judgment.
The father answered the mother’s petition and filed a counterclaim in which he sought visitation with the children. In his answer, the father raised questions regarding the trial court’s jurisdiction over the proceeding. In response, the mother amended her modification petition to state that no court of any other state would have jurisdiction over the child-custody and child-support issues and that the mother expressly “consents to the jurisdiction of [the trial court] with respect to the child custody and support issues.”
After a trial in January 2011, the trial court entered a judgment on March 1, 2011, modifying the 2005 divorce judgment. In that judgment, the trial court determined that it had subject-matter jurisdiction over the child-custody and child-support issues, awarded the parties joint legal custody of the children, awarded the mother sole physical custody of the children, awarded the father specified visita *964 tion periods, and ordered the father to pay $1,254.47 per month in child support. According to the judgment, the father’s child-support obligation was made retroactive to April 23, 2009, the date of paternity-test results confirming the father’s paternity of the children. The trial court calculated the father’s child-support arrearage to be $26,343.87 and awarded the mother that amount. The trial court required the mother to maintain health insurance on the children and ordered that the parties would each be responsible for one-half of any noncovered medical expenses incurred on behalf of the children. Because the trial court also made the father’s responsibility for noncovered medical expenses retroactive to April 23, 2009, the trial court awarded the mother $226.30 for medical expenses incurred on behalf of the children between that date and the date of the judgment. The trial court denied all other relief requested by the parties.
The father sought postjudgment review of the trial court’s March 1, 2011, judgment. The father requested that he be allowed to secure health insurance covering the children so that he would not be required to pay 79.27% of the health-insurance premium paid by Joel Hein, the mother’s current husband, for the health insurance coverage for Hein, Hein’s child, the mother, and the children.[1] According to the father, he could secure health insurance without an additional cost to him and that that insurance would provide full coverage to the children in New York, where the mother and the children were currently living. After a hearing on the father’s motion, the trial court amended its judgment on June 15, 2011, to adjust the father’s child-support obligation downward to $929.84 per month and to adjust the child-support arrearage to $19,526.58 as a result of the trial court’s decision not to include the health-insurance premium paid by the mother’s current husband in its child-support-obligation calculation. The court specifically found that it would be manifestly unjust and inequitable to include the health-insurance premium in the child-support-obligation calculation under the facts of the case.
The mother sought postjudgment review of the trial court’s June 15, 2011, amended judgment. On July 22, 2011, the mother filed a notice of appeal to this court. The trial court denied the mother’s post-judgment motion on August 24, 2011. The mother’s notice of appeal therefore became effective on that date. See Rule 4(a)(5), Ala. R.App. P. (providing that a notice of appeal filed before the resolution of a post-judgment motion is held in abeyance and becomes effective on the date the post-judgment motion is resolved by a ruling or denied by operation of law).
Although neither party raises the issue of jurisdiction, we must first consider whether we have jurisdiction over this appeal. Baker v. Baker, 25 So.3d 470, 472 (Ala.Civ.App.2009) (stating that an appellate court may take notice of jurisdictional matters ex mero motu). We begin our analysis by considering Alabama’s version of the Uniform Child Custody Jurisdiction and Enforcement Act (“UCCJEA”), codified at Ala.Code 1975, § 30-3B-101 et seq. The UCCJEA sets out the basis for subject-matter jurisdiction in a child-custody proceeding.[2] A state has jurisdiction to *965 enter an initial child-custody determination only when one of the criteria in § 30-3B-201(a) is satisfied.[3] See § 30-3B-201(b) (“Subsection (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this state”). Section 30-3B-201(a) provides:
“(a) Except as otherwise provided in Section 30-3B-204, a court of this state has jurisdiction to make an initial child custody determination only if:
“(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
“(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 30-3B-207 or 30-3B-208, and:
“a. The child and the child’s parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
“b. Substantial evidence is available in this state concerning the child’s care, protection, training, and personal relationships;
“(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 30-3B-207 or 30-3B-208; or
“(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).”
As the trial court stated at the trial, Alabama was not the home state of the children at the commencement of the child-custody proceeding instituted by the mother. According to the mother, at the time she filed her petition for modification, she and the children were living, and had been living since the children’s birth in 2005, in Ontario, Canada. The mother argued, as noted above, that, based on § 30-3B-201(a)(4), the trial court had jurisdiction to make a child-custody determination because, she contended, no other state had jurisdiction to make a child-custody determination. However, the mother was operating on the assumption that the UCCJEA applies only to states of the United States. Indeed, the word “state” is. defined in § 30-3B-102(15) as “[a] state of the United States, the District of Columbia, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States.” However,
*966 § 30-3B-105 governs the international application of the UCCJEA and provides:
“(a) A court of this state shall treat a foreign country as if it were a state of the United States for the purpose of applying this article [§§ 30-3B-101 through 30-3B-112] and Article 2 [§§ 30-3B-201 through 3-3B-210].
“(b) Except as otherwise provided in subsection (c), a child custody determination made in a foreign country under factual circumstances in substantial conformity with the jurisdictional standards of this chapter [i.e., the UCCJEA] must be recognized and enforced under Article 3 [§§ 30-3B-301 through 30-3B-114].
“(c) A court of this state need not apply this chapter if the child custody law of a foreign country violates fundamental principles of human rights.”
No one has suggested that the child-custody law of Canada “violates fundamental principles of human rights,” so, pursuant to § 30-3B-105(a), we “shall treat [Canada] as if it were a state of the United States for the purpose of applying” the UCCJEA’s jurisdictional provisions. At the time of the Canadian custody proceeding in 2005, Canada was undisputedly the home state of the children — both of the children had been born there and had been living there with them mother since their birth.[4] At the time the mother filed this action, Canada remained the home state of the children.
Alabama is not the children’s home state, and application of the UC-CJEA results in the conclusion that, at the time of the commencement of the mother’s action, Canada was the children’s home state. Thus, because another “state” had jurisdiction to enter a child-custody determination pursuant to the UCCJEA, the trial court in Alabama lacked subject-matter jurisdiction to make an initial child-custody determination in the present case. Subject-matter jurisdiction may not be conferred by agreement or consent. § 30-3B-201, Official Comment (“It should also be noted that since jurisdiction to make a child custody determination is subject matter jurisdiction, an agreement of the parties to confer jurisdiction on a court that would not otherwise have jurisdiction under this Act is ineffective.”); see also C.J.L. v. M.W.B., 868 So.2d 451, 453-54 (Ala.Civ.App.2003) (holding that a mother’s actions in litigating the propriety of the judgment under review could not confer jurisdiction by consent in violation of the UCCJEA). Because a judgment entered without subject-matter jurisdiction is void and cannot support an appeal, see C.J.L., 868 So.2d at 454, we dismiss the appeal insofar as it has been taken from the child-custody determination contained within the trial court’s judgment.
We turn now to the question whether the trial court had jurisdiction to render the child-support aspect of its judgment. The statute governing jurisdiction over child-support orders is Alabama’s version of the Uniform Interstate Family Support Act (“UIFSA”), codified at Ala.Code 1975, § 30-3A-101 et seq. Under UIFSA, an Alabama court may issue a child-support order if no other child-support order entitled to recognition under UIFSA has been *967 issued and if “the individual seeking the order resides in another state.” § 30-3A-401(a). We note that, like the UCCJEA, UIFSA provides that a foreign jurisdiction may be considered to be a state for purposes of analysis under UIFSA. § 30-3A-101(20). Under § 30-3A-101(20), the term “state” is defined as
“a state of the United States, the District of Columbia, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States. The term includes:
“(i) an Indian tribe; and
“(ii) a foreign jurisdiction that has enacted a law or established procedures for issuance and enforcement of support orders which are substantially similar to the procedures under this chapter, the Uniform Reciprocal Enforcement of Support Act, or the Revised Uniform Reciprocal Enforcement of Support Act.”
An Alabama court has already determined that the Canadian court lacked jurisdiction over the father, apparently based on his assertions that he was not properly served and on his lack of contact with Canada. In addition, we note that the Canadian judgment would not have been recognized under UIFSA, based on the fact that the father met none of the bases for the exercise of personal jurisdiction set out in § 30-3A-201, which provides:
“In a proceeding to establish, enforce, or modify a support order or to determine parentage, a court of this state may exercise personal jurisdiction over a nonresident individual or the individual’s guardian or conservator if:
“(1) the individual is personally served with summons and complaint within this state;
“(2) the individual submits to the jurisdiction of this state by consent, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction;
“(3) the individual resided with the child in this state;
“(4) the individual resided in this state and provided prenatal expenses or support for the child;
“(5) the child resides in this state as a result of the acts or directives of the individual;
“(6) the individual engaged in sexual intercourse in this state and the child may have been conceived by that act of intercourse;
“(7) the individual asserted parentage in the putative father registry as provided in Section 26-10C-1, which is maintained in this state by the Department of Human Resources; or
“(8) there is any other basis consistent with the constitutions of this state and the United States for the exercise of personal jurisdiction.”
As noted above, under § 30-3A-401, an Alabama court has jurisdiction to issue a child-support order if no other child-support order is recognized under UIFSA and if the party seeking the child-support order resides in another state. The Canadian child-support order is not recognized under UIFSA, and the mother resides in another “state.” Accordingly, based on § 30-3A-201, § 30-3A-401, and the facts of this case, the trial court had jurisdiction to enter its child-support order in the present case. We will therefore consider the mother’s arguments concerning the child-support aspects of the trial court’s judgment.
On appeal, the mother first argues that the trial court erred in failing to include in *968 the child-support-obligation calculation the amount of the health-insurance premium paid by her current husband for group coverage through his employer. She also argues that the trial court erred when it imputed income to her in light of her testimony that she was unable to work. Regarding the trial court’s award of retroactive child support, the mother complains that the trial court erred in failing to award retroactive child support from the date of the birth of the children and that the trial court erred by using incorrect income figures in the calculation of the father’s child-support arrearage.
The testimony at trial established that when the mother and the father separated in November 2004, the mother went to Ontario to be with her family. At that time, she was a dental assistant. She had earned approximately $30,000 in 2004; in 2003, she had earned $24,857. After the children were born, the mother stayed at home with them for a time and then took a part-time position as a retail sales clerk. She last worked in April 2009.
The mother testified that 'she suffers from scoliosis that had progressively worsened. According to the mother, her doctor has “deemed [her] as not being able to work.” She said that she could not stand for more than 30 minutes before she felt like “her spine is crushing.” She also said that she could not sit for more than one hour without changing position. She testified that a job as a dental assistant required both standing and sitting, although she said that more time was spent standing than sitting on a typical day. Her position as a retail sales clerk had required her to stand; however, she explained that she had worked only part time and that she had usually worked only a few hours per day.
The mother explained that her current husband provided health insurance for the children through a family-coverage plan provided by his employer. Her current husband testified that he paid $409.50 per month as a health-insurance premium for coverage for him, the mother, his child from a previous relationship, and the children. Both the mother and her current husband testified that the father had not contributed support for the children and that the father had had no contact with the children.
The father testified that he had not had contact with the children since the entry of the Canadian judgment because that judgment had not provided him visitation rights and because he was wary of going to Canada lest he be charged with failing to support the children. He did not explain why he had not had contact with the children before the entry of the Canadian judgment. He admitted that he had never provided child support for the children. The father had earned $69,000 in 2009 but had earned only $40,000 in 2010; he explained that the defense contractor for which he had worked had been relocated and that he had been forced to take a less lucrative position with another contractor. The father’s income affidavit indicates that he earns $4,151.33 per month and that he also receives $656 per month in military disability benefits for a total monthly income of $4,807.33.
The mother first takes issue with the trial court’s failure to include within its child-support-obligation calculation the amount of the health-insurance premium paid by her current husband for health-insurance coverage for the children and the rest of his family. Rule 32, Ala. R. Jud. Admin., governs the determination of child support. Thomas v. Norman, 766 So.2d 857, 859 (Ala.Civ.App.2000). That rule provides that health-insurance coverage shall be ordered if it is available to either parent at a reasonable cost. Rule *969 32(B)(7)(a). Rule 32(b)(7)(d) and (e) further explain how the premium for health insurance is to be applied in the calculation of child support:
“(d) The actual cost of a premium to provide health-insurance benefits for the children shall be added to the ‘basic child-support obligation’ and shall be divided between the parents in proportion to their adjusted gross income in the percentages indicated on the Child-Support Guidelines form (Form CS-42).
“(e) The amount to be added to the ‘basic child-support obligation’ shall be the actual amount of the total insurance 'premium for family/dependent coverage, regardless of whether all children covered are in the same family.”
(Emphasis added.)
Although the trial court originally added the entire $409.50 health-insurance premium to the basic child-support obligation as required by Rule 32(B)(7)(d) and (e), it amended its judgment on the father’s post-judgment motion to completely remove the health-insurance premium from the child-support-obligation calculation. In doing so, the trial court specifically stated that it found that including the health-insurance premium in the calculation of the father’s child-support obligation would be “manifestly unjust and inequitable” because it would result in the father’s paying 79.27% of the health-insurance premium covering not only his two children but also the mother, her current husband, and his child from an earlier relationship. Thus, it appears that the trial court determined that, based on the facts of this case, it should deviate from the child-support guidelines in its determination of the proper child-support obligation for the father. See Rule 32(A)(ii).
Under Rule 32(A), a trial court may choose not to apply the child-support guidelines if it makes a written finding on the record that “application of the guidelines would be unjust or inappropriate” and if the finding is supported by “[a] determination by the court, based upon evidence presented in court and stating the reasons therefor, that application of the guidelines would be manifestly unjust or inequitable.” Rule 32(A)(ii). As we explained in DeYoung v. DeYoung, 853 So.2d 967, 970 (Ala.Civ.App.2002):
“When the court determines that the application of the guidelines would be manifestly unjust or inequitable and then deviates from those guidelines in setting a support obligation, the court must make the findings required by Rule 32(A)(ii), Ala. R. Jud. Admin. M.S.H. v. C.A.H., [829 So.2d 164 (Ala.Civ.App.2002)] (citing Thomas [v. Norman ], 766 So.2d [857,] 859 [ (Ala.Civ.App.2000) ]). Rule 32(A), Ala. R. Jud. Admin., allows the trial court to deviate from the guidelines so long as the deviation is based on ‘evidence presented in court’ contained in a ‘written finding on the record.’ In other words, the subsection requires the trial court to state a reason justifying its deviation from the guidelines.”
As we have explained before, in order to justify a deviation from the guidelines, the record must contain factual support for the conclusion that application of the guidelines would be unjust or inequitable under the circumstances facing the obligor. Preda v. Preda, 877 So.2d 617, 622 (Ala.Civ.App.2003). In Preda, we reversed the trial court’s judgment ordering child support in an amount less than that resulting from application of the guidelines because the father in that case had not demonstrated that he was unable to afford the child-support obligation that resulted from the application of the guidelines. Preda, 877 So.2d at 622.
*970 Although we understand the trial court’s concern over the father’s being required to pay a large percentage of the health-insurance premium that covers three other people and not just the children, it is apparent from the language used in Rule 32(B)(7)(e) that the guidelines recognize that family or dependent coverage could well include children who are not the subject of the child-support obligation. To determine that the application of Rule 32(B)(7)(e) is unjust or inequitable simply because the health-insurance premium secures insurance covering persons other than the obligor’s children would be to ignore the fact that the rule specifically acknowledges this issue yet still requires that the “actual amount of the total insurance premium” be used in the child-support-obligation calculation. Because the record does not reflect that the father requested that he be completely relieved from providing health-insurance coverage for his children and because the evidence at trial does not support the conclusion that the amount of child support required under the guidelines would affect the father’s ability to meet his normal expenses or otherwise unjustly burden him, we cannot agree that the trial court had a sufficient factual basis to support a deviation from the guidelines in the present case. On remand, however, the trial court may wish to consider the father’s request that he, and not the mother, be responsible for securing health insurance covering the children.
The mother next argues that the trial court improperly imputed income to her despite her testimony that she is unable to work because she suffers from scoliosis. As we have explained,
“Rule 32(B)(5), Ala. R. Jud. Admin., provides, in pertinent part:
“ ‘If the court finds that either parent is voluntarily unemployed or underemployed, it shall estimate the income that parent would otherwise have and shall impute to that parent that income; the court shall calculate child support based on that parent’s imputed income. In determining the amount of income to be imputed to a parent who is unemployed or underemployed, the court should determine the employment potential and probable earning level of that parent, based on that parent’s recent work history, education, and occupational qualifications, and on the prevailing job opportunities and earning levels in the community.’
“In cases of voluntary underemployment, the amount of income to be imputed to the parent is a question of fact to be decided based on the evidence presented to the trial court. See G.B. v. J.H., [915 So.2d 570 (Ala.Civ.App.2005) ]; see also Clements v. Clements, 990 So.2d 383, 394 (Ala.Civ.App.2007) (quoting Winfrey v. Winfrey, 602 So.2d 904, 905 (Ala.Civ.App.1992)) (‘The trial court is afforded the discretion to impute income to a parent for the purpose of determining child support, and the determination that a parent is voluntarily unemployed or underemployed “is to be made from the facts presented according to the judicial discretion of the trial court.” ’). We may reverse a judgment imputing income to a voluntarily underemployed parent that is based on ore tenus evidence only if that judgment is so unsupported by the evidence as to be plainly and palpably wrong. G.B. v. J.H., 915 So.2d at 575.”
Stone v. Stone, 26 So.3d 1228, 1230-31 (Ala.Civ.App.2009)(footnote omitted).
The trial court imputed a monthly income of $1,257 to the mother. Although the mother’s testimony at trial was that she was unable to work, she testified that, *971 in the past, she had worked as a dental assistant earning as much as $30,000 per year and as a retail sales clerk earning at least $700 per month. The mother said that she could not stand for more than 30 minutes or sit in 1 position for more than an hour without discomfort. The mother admitted that a dental assistant would sit and stand alternately throughout the day, depending on the task he or she was performing. She also admitted that her job as a retail sales clerk had required her to stand at least a few hours per day. The trial court observed the mother during her testimony, and it alone was permitted to judge her credibility regarding her testimony that she lacked the ability to work. G.B. v. J.H., 915 So.2d 570, 575 (Ala.Civ.App.2005). Thus, we cannot conclude that the trial court’s decision to impute income to the mother was not supported by the evidence.
The mother’s final arguments concern the trial court’s award of retroactive child support under Ala.Code 1975, § 30-3-110 et seq. The mother first complains that the trial court erred in failing to award retroactive support back to the date of the children’s birth instead of to the date that the father’s paternity was established. She further contends that the trial court did not use the correct income figures to determine the amount of retroactive child support the father owed.
The most comprehensive discussion of the retroactive-child-support statutes is found in P.Y.W. v. G.U.W., 858 So.2d 265, 267-68 (Ala.Civ.App.2003):
“It is a basic principle of Alabama law that a parent has a duty to support his or her minor child and that this duty of support is a fundamental right of all minor children. State ex rel. Shellhouse v. Bentley, 666 So.2d 517, 518 (Ala.Civ.App.1995); Ex parte University of South Alabama, 541 So.2d 535, 537 (Ala.1989). The Alabama Legislature, recognizing this duty, created a cause of action specifically for retroactive child support. See Ala.Code 1975, §§ 30-3-110 through -115.
“Even before §§ 30-3-110 through -115 became effective in March 1994, the Alabama Legislature had made it clear that retroactive child support is favored in order to ensure that minor children receive the support that is their due. Section 26-17-9(d), Ala.Code 1975, provided, and still provides, in pertinent part, that a child’s mother may file ‘[a] complaint for nonsupport of [the] child ... alleging sufficient facts that the defendant owes a duty of support, provided, that support payments have not been ordered previously pursuant to a decree of divorce.’ Moreover, § 26-17-8, Ala. Code 1975, specifically provided before the enactment of §§ 30-3-110 through -115, and still provides, that a court may order a father to pay retroactive child support for a period of two years prior to the filing of a complaint, or the birth of the child, whichever is the shorter time period.
“In Brown v. Brown, 719 So.2d 228 (Ala.Civ.App.1998), this court addressed the issue whether, apart from an action brought under §§ 30-3-110 through -115, Alabama law provided for the award of retroactive child support. In a case in which the complaint was filed ‘shortly after’ the parties separated, 719 So.2d at 229, this court answered that question as follows:
“ ‘Given this state’s policy and law requiring a parent to support a minor child, ... a trial court may, in its discretion, award child support retroactive to the filing of the complaint for divorce where the trial court has failed to enter a pendente lite child support order for the period in which *972 the parent had a duty to support the child but failed to provide that support.’
“Brown, 719 So.2d at 232.
“As noted, the claim for retroactive child support in Brown was not one brought pursuant to §§ 30-3-110 through -115. Moreover, we note that the trial court’s judgment in Brown was entered approximately two years after the parties’ separation and that the only issue in that case was whether retroactive child support was due for the one-year period immediately before trial, a period during which the husband paid no child support. During the first 12 months following the parties’ separation, the father had voluntarily paid substantial child support. Id. No issue was presented in Brown as to the possibility of a retroactive award of child support for any period ■ before the filing of the • complaint.
“In the present case, the mother argues that §§ 30-3-110 through -115 ‘show an intent by the Legislature to bolster the rights of minors to [child] support which had previously been guaranteed by earlier statutes [such as §§ 26-17-8 and 26-17-9] and the common law.’ We agree. Section 30-3-110 provides:
“ ‘There is hereby created a civil action to establish an order of retroactive support which may be brought against a non-supporting parent who has a duty to support as the legal parent of a child or children but has failed to provide support. The action may be brought by the parent or guardian with physical or legal custody who is providing the actual care and support for the child or may be brought by the Department of Human Resources pursuant to the provisions of [Ala.Code 1975,] Section 38-10-1 et seq. An action under this section can be brought only if support has not previously been ordered pursuant to a divorce or other action in this or any other jurisdiction.’
“Section 30-3-114, Ala.Code 1975, provides:
“ ‘The order of retroactive support shall be a sum certain judgment and may cover all periods in which the non-supporting parent failed to provide support. For all time periods in which support is requested, the court shall consider the needs of the child or children and the ability of the parents to respond to these needs, and shall determine the amount of support due for each period by application of the child support guidelines found in Rule 32 of the Alabama Rules of Judicial Administration based upon the circumstances during the time period for which support is sought. If the judgment for retroactive support includes support due for a period of time in which aid was paid by the Department of Human Resources and an assignment of support rights thereby exists under Section 38 — 10—4[, Ala.Code 1975,] and Section 38-10-5, [Ala.Code 1975,] the department shall be entitled to recover any support due the department under Section 38-10-6[, Ala. Code 1975].’ ”
However, we need not consider the mother’s argument that the trial court should have awarded retroactive child support from the date of the children’s birth in March 2005 because the record contains no evidence regarding the father’s income before 2009 upon which the trial court could have calculated and entered such a retroactive child-support order.[5]
*973 The mother’s argument that the trial court used incorrect income figures to calculate the retroactive child support awarded to her is well taken. Section 30-3-114 requires that a trial court apply Rule 32 when computing retroactive child support; that section reads, in pertinent part:
“The order of retroactive support shall be a sum certain judgment and may cover all periods in which the nonsupporting parent failed to provide support. For all time periods in which support is requested, the court shall consider the needs of the child or children and the ability of the parents to respond to these needs, and shall determine the amount of support due for each period by application of the child support guidelines found in Rule 32 of the Alabama Rules of Judicial Administration based upon the circumstances during the time period for which support is sought.”
The father’s income in 2009 was more than the amount he earned at the time of trial; however, the trial court used the father’s income at the time of trial to determine the amount of retroactive child support due instead of using the father’s 2009 income in establishing retroactive support for the period between April 23, 2009, and December 2009. In doing so, the trial court failed to comply with Rule 32 and therefore erred. Accordingly, the trial court’s judgment, insofar as it awarded retroactive child support, is reversed, and the cause is remanded for the trial court to properly compute the retroactive child support due for the period between April 23, 2009, and December 2009.
In conclusion, the trial court lacked subject-matter jurisdiction under the UC-CJEA to enter a child-custody determination respecting the children. Insofar as the mother appeals from that portion of the judgment, her appeal, having been taken from a void judgment, is dismissed. That portion of the trial court’s judgment establishing the father’s child-support obligation is reversed because of the trial court’s failure to include within its computations the entire amount of the health-insurance premium that covers the parties’ children. We also reverse the trial court’s award of retroactive child support because the trial court erred by improperly calculating the amount of support due under § 30-3-114. The cause is therefore remanded to the trial court with instructions to vacate its child-custody determination and to recalculate both its prospective and its retroactive child-support awards.
The mother’s request for an attorney fee on appeal is denied.
APPEAL DISMISSED IN PART; REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, J., concur.
MOORE, J., concurs specially, with writing.
BRYAN, J., concurs in the result only, with writing.

. The mother married Hein in December 2009, and the mother and the children moved to the state of New York, where they resided at the time of the January 2011 trial.

. A "child custody proceeding’’ is defined as
“[a] proceeding in a court in which legal custody, physical custody, or visitation with respect to a child is an issue. The term includes a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental *965 rights, and protection from domestic violence, in which the issue may appear. The term does not include a court proceeding involving juvenile delinquency, contractual emancipation, adoption, or enforcement under Article 3 [§§ 30-3B-301 through 30-3B-314].”
§ 30-3B-102(4).

. A “child custody determination” is defined as
"[a] judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order. The term does not include an order relating to child support or other monetary obligation of an individual.”
§ 30-3B-102(3).

. "Home state” is defined in § 30-3B-102(7) as
"[t]he state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of the child or any of the mentioned persons is part of the period.”

. Our review of the record reveals no evidence concerning the father’s income for the *973 years between the birth of the children in 2005 and 2009. The income information contained in the record regarding the father re-fleets that he earned $4,807 per month at the time of trial and that he had earned $69,000 in 2009.