ROSEMARY LEDET, Judge.
_JjThis is an international child custody dispute. The dispositive issue is whether the trial court erred in finding that the parties’ minor child’s home state under the Uniform Child Custody Jurisdiction and Enforcement Act (the “UCCJEA”) is Canada. Both the mother, Jennifer Lyn Baxter, and the minor child, AB,[1] currently reside in Fort Erie, Ontario, Canada. The father, Adrian Baxter, is in the United States Navy; and he is currently stationed in Washington, D.C. Mr. Baxter, nonetheless, commenced this divorce and custody proceeding in Orleans Parish. In his petition, he averred that the parties established their matrimonial domicile in Orleans Parish and that they retained their domicile there despite their current residence elsewhere — Canada and Washington, D.C.
In response, Ms. Baxter filed various declinatory exceptions, including lack of subject matter jurisdiction over the child custody matter. Finding the child’s home state is Canada, the trial court sustained Ms. Baxter’s jurisdictional exception as to the custody matter. From the jurisdictional ruling, Mr. Baxter appeals. For the treasons that follow, we convert Mr. Baxter’s appeal to an application for supervisory writ, grant his writ application, and deny the relief he requests.
FACTUAL AND PROCEDURAL BACKGROUND
On December 21, 2006, the parties were married in New Orleans, Louisiana, and established a matrimonial domicile there. Before their marriage, the parties lived in Fort Erie, Ontario, Canada. Ms. Baxter was raised in Fort Erie; she lived there until she went to college. Her family still lives there. Her status in Canada is a landed immigrant with permanent residence status.[2] Mr. Baxter’s family lives in Newark, New Jersey. He last lived in New Jersey about eighteen years before the hearing in this matter; however, the parties have used his New Jersey home address for various purposes, including receiving mail there.
In February 2006, the parties purchased a farm house in Fort Erie, Ontario, Canada, which is where Ms. Baxter currently resides with their minor child, AB. In late 2006, the parties purchased a second house in New Orleans, Louisiana. The parties last resided as a family in the New Orleans house in early 2012.
AB, the parties’ only child, was born on January 13, 2007, in Canada. When AB was born, the parties were residing in New Orleans.' Nonetheless, the parties traveled to Canada for AB to be born there. They did so in order for AB, unlike Ms. Baxter, to have dual citizenship in the United States and Canada. Two weeks after AB’s birth, they returned to live in New Orleans.
*1162 |sDuring the time the parties were married, they moved multiple times due to Mr. Baxter’s military employment. Over the years, Mr. Baxter has been deployed overseas four times — three times to Afghanistan and once to Japan. Generally, Ms. Baxter and AJB lived in Canada when Mr. Baxter was deployed overseas. When he was deployed to Japan, however, Ms. Baxter was working as a school teacher in New Orleans. Hence, she and AJB thus remained in New Orleans when he went to Japan. Mr. Baxter also has been stationed in multiple locations in the United States, including New Orleans, Louisiana; Athens, Georgia; Norfolk, Virginia; Gulf-port, Mississippi; and Washington, D.C. Indeed, the parties first came to New Orleans in 2006 because Mr. Baxter was stationed there. Ms. Baxter and AJB have lived with Mr. Baxter in New Orleans, Louisiana; Athens, Georgia; and Norfolk, Virginia. During the time Mr. Baxter was stationed in Gulfport, Mississippi, they all lived in New Orleans; and Mr. Baxter commuted to Gulfport.
In August 2012, Ms. Baxter and AJB left New Orleans and moved to Canada, where they have lived since that time. Mr. Baxter was aware of, consented to, and physically assisted in the move to Canada. Indeed, in November 2012, he drove a moving truck with some of their belongings from New Orleans to Canada. Since August 2012, Mr. Baxter has lived in Afghanistan and Washington, D.C. Neither party currently lives in New Orleans. They, however, still own the house they purchased in New Orleans, which they lease fully furnished on a yearly basis.
In October 2013, the parties physically separated. In February 2014, Mr. Baxter filed a petition for divorce in Orleans Parish. In his petition, he requested, 14among other things, sole custody of AJB; and he made the following averments pertinent to the jurisdictional issue before us:
• Adrian Baxter is currently deployed with the United States Navy. He returns from active deployment and active duty in March, 2014. Adrian Baxter’s current deployment is the fourth time he has been deployed. During the couple’s marriage, when Adrian Baxter deployed overseas, Jennifer Lyn Baxter took the minor child to the parties’ secondary home in Fort Erie, Ontario;
• Adrian Baxter started training for his most recent deployment in October, 2012. During this time, Jennifer Lyn Baxter and the minor child went to Fort Erie, Ontario, where they usually stay during Adrian Baxter’s deployment. Adrian Baxter deployed for Afghanistan in May, 2013.
• Jennifer Lyn Baxter’s actions show that she does not intend to return to the New Orleans area. Her decision to relocate to Canada with the minor child was made without Adrian Baxter’s consent and without judicial authorization, in violation of the Louisiana Relocation Statute.
In response, Ms. Baxter filed declinato-ry exceptions of lack of subject matter jurisdiction over the child custody matter, lack of personal jurisdiction, and improper venue. On May 8, 2014, the parties entered into a written stipulation continuing the hearing on the exceptions to June 2014 and agreeing that Mr. Baxter be allowed daily telephone communication with AJB.
On June 11, 2014, an evidentiary hearing was held on Ms. Baxter’s exceptions. At the time of the hearing, Ms. Baxter and AJB were living in Canada. They had been living there since August 2012. AB was enrolled in school and extracurricular activities there. Mr. Baxter was living in Washington, D.C., as a result of a military *1163 assignment. At the hearing, both parties testified. Ms. Baxter also called several other witnesses. The gist of her witnesses’ testimony was that Ms. Baxter’s August 2012 move to Canada was a permanent, not a temporary, one. | sThe gist of the parties’ testimony was that the August 2012 move was mutually agreed upon by the parties; however, the parties vehemently disputed whether the move was intended to be a permanent one, as Ms. Baxter testified, or a temporary one, as Mr. Baxter testified. Following the hearing, the trial court took the matter under advisement.
On August 11, 2014, the trial court rendered an interim judgment ordering that Mr. Baxter be allowed to initiate daily telephone contact with AB. On August 25, 2014, Mr. Baxter filed a Rule for Contempt, alleging that Ms. Baxter had violated the parties’ stipulation and the court’s interim order allowing him to initiate daily telephone contact with AB. In response to the contempt rule, Ms. Baxter re-urged her declinatory exceptions of lack of subject matter jurisdiction and lack of personal jurisdiction. She requested that the trial court decline to rule on the motion for contempt until after the court ruled on her pending exceptions to the divorce petition.
On October 13, 2014, the trial court rendered a judgment on the pending exceptions to the divorce petition. The trial court sustained Ms. Baxter’s exception of lack of subject matter jurisdiction over the child custody matter, denied her exceptions of lack of personal jurisdiction and improper venue, and found that it had jurisdiction over the parties’ divorce and ancillary matters.
As to the exception of personal jurisdiction, the trial court concluded that Ms. Baxter “presented persuasive evidence that she had established her domicile in Fort Erie, Ontario, Canada by the time Adrian [Baxter] filed for divorce.” | ^Nonetheless, the court found that Ms. Baxter had maintained sufficient minimum contacts with this state for it to exercise personal jurisdiction over Ms. Baxter based on the following facts:
Adrian [Baxter] testified that the parties married in New Orleans in December, 2006. They purchased a home in New Orleans and returned repeatedly between Adrian [Baxter’s] assignments out of state, and the country, all in connection with his employment with the United States Navy. For the 2011/2012 school year, Jennifer [Baxter] worked full-time as a public school teacher in New Orleans. The parties annually claim the homestead exemption on the immovable property they still own [in] New Orleans. These activities alone constitute sufficient contacts with Louisiana to subject Jennifer [Baxter] to the jurisdiction of this court.
As to the venue exception, the trial court pointed out that Orleans Parish was the only parish in this state in which this action could have been filed. The trial court thus overruled the exception. Nonetheless, the trial court noted that the substance of Ms. Baxter’s venue exception was that the court lacked subject matter jurisdiction over the parties’ divorce and ancillary matters. Rejecting this contention, the trial court reasoned as follows:
The parties admittedly lived a “nomadic lifestyle,” traveling frequently for extended periods of time. However, the weight of the evidence indicates that prior to August of 2012, the parties were domiciled in New Orleans, Louisiana, and that their home located here was in fact their primary residence. The Court finds Adrian [Baxter’s testimony, that the parties’ absences were temporary and that they always returned to New Orleans between assignments, to be credible.
*1164 Continuing, the court cited La. C.C.P. art. 10(B), which provides a rebuttable presumption that if a spouse has established and maintained his or her residence in a parish for a period of six months, the spouse’s domicile is in that parish. The court found that Ms. Baxter had not rebutted the presumption that the | parties’ domicile was in Louisiana immediately before she and AB moved to Fort Erie in August 2012. The court further reasoned as follows:
Jennifer [Baxter] urges that when the spouses moved Jennifer [Baxter] and the minor child to Canada in August 2012, they intended to change their domicile to Canada. Adrian [Baxter] testified that as a member of the United States Navy, he could not have a domicile outside of the United States. His other residences since August 2012 were Afghanistan and later the Washington D.C. area for a training program. Adrian [Baxter] testified that his Washington D.C. area residence was shared with several other men. He stated that he uses plastic utensils and left his furnishings and other “comforts of home” in the Orleans Parish house.
Finding the evidence was insufficient to rebut the presumption against a change of domicile as to Mr. Baxter, the trial court found that it had jurisdiction over the divorce and ancillary matters.[3]
Finally, as to subject matter jurisdiction over the child custody matter, the trial court reached a contrary result, reasoning as follows:
The domicile of a minor is that of the parent or parents with whom the minor usually resides. Louisiana Civil Code Article 41. From August, 2012 until the present, the child has resided and attended school in Fort Erie, Ontario, Canada. Jennifer [Baxter] testified to her actions showing her intent to establish a domicile in Fort Erie. She renovated the family home, started a vegetable garden, and moved more of her personal belongings from the family’s New Orleans home to the home in Fort Erie. Jennifer [Baxter] also testified that she and [the] minor child have many friends and family members in and around Fort Erie.
Generally, a state has jurisdiction over child custody matters when it is the home state of the minor child. [La. R.S. 13:1813] ...
Since the minor child has not resided in this state since August of 2012, the courts of Fort Erie have greater access than this court to relevant information concerning the child’s care, protection, training, and personal relationships. Accordingly, this court lacks jurisdiction to determine child custody issues in this case.
|RFrom this judgment, Mr. Baxter filed both a notice of intent to file a writ appli- ' cation on October 24, 2014, and a motion for appeal on November 14, 2014.
Meanwhile, Mr. Baxter attempted to reset his contempt rule. In response, on October 28, 2014, Ms. Baxter filed exceptions of res judicata and lack of subject matter jurisdiction over custody pursuant to La. R.S. 13:1801-1842, and an opposition to the contempt rule. Ms. Baxter informed the court that subsequent to the October 13, 2014 jurisdictional ruling, she filed a child custody proceeding in Fort Erie, Ontario, Canada, and that a hearing on child custody was scheduled in Canada for November 5, 2014. She requested that, given the trial court’s decision that it lacked subject matter jurisdiction over any *1165 issue relating to the child custody matter, the trial court dismiss the contempt rule. She, however, acknowledged that Mr. Baxter had filed a notice of intent to file a writ application with this court to seek review of the October 13, 2014 jurisdictional ruling.
On October 29, 2014, the trial court overruled Ms. Baxter’s objection to it hearing Mr. Baxter’s contempt rule. At the hearing, the trial court noted its belief that it had “continuing jurisdiction to enforce its own orders with respect to visitation, [and] that this is a visitation issue not a custody issue.” The trial court thus expressed its intent to exercise jurisdiction to address the contempt rule. The trial court, however, granted Ms. Baxter’s request to stay the proceeding pending her filing a writ application with this court. In her writ application, Ms. Baxter acknowledged that Mr. Baxter was appealing the October 13, 2014 jurisdictional ruling. Nonetheless, she contended that the trial court’s finding that it lacked | asubject matter jurisdiction was dispositive of the issue presented by her writ, which was whether the trial court had jurisdiction to hear Mr. Baxter’s contempt rule. On January 27, 2015, this court granted Ms. Baxter’s writ application, stating as follows:
After review, we find that the trial court erred in overruling relator’s [Ms. Baxter’s] objection to the court hearing the contempt rule. The district court correctly determined that it lacked subject matter jurisdiction relative to custody issues. As the contempt rule directly flows from the interim order allowing telephonic visitation with the child, which is a custody/visitation matter, it necessarily follows that the district court lacks subject matter jurisdiction to hear the rule.
Baxter v. Baxter, 14-C-1303 (La.App. 4 Cir. 1/27/15) (unpub.).
Mr. Baxter did not seek review of this court’s ruling granting Ms. Baxter’s writ application. Nor did he file a writ to seek review from the trial court’s October 13, 2014 jurisdictional ruling. Instead, he filed the instant appeal seeking review of the jurisdictional ruling. Before reaching the merits of his appeal, we address a threshold issue of this court’s appellate jurisdiction.
APPELLATE JURISDICTION
The instant appeal is from a judgment dismissing some, but not all, of Mr. Baxter’s claims — the claims relating to the custody matter — based on a lack of subject matter jurisdiction. Although the trial court granted a motion for appeal, the jurisdictional ruling is an interlocutory judgment under La. C.C.P. art. 1841. Article 1841 provides that “[a] judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment.” La. C.C.P. art. 1841. “An interlocutory judgment is appealable only when expressly provided by law.” La C.C.P. art. 2083(C). The only express law 110permitting an appeal of a judgment sustaining an exception of lack of subject matter jurisdiction as to one of multiple claims is La. C.C.P. art. 1915, which provides as follows:
When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories against a party, whether in an original demand, reconventional demand, cross-claim, third-party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.
*1166 La. C.C.P. art. 1915(B)(1). No such designation appears in the record. Nor does Mr. Baxter assert that he has sought or obtained one. We therefore lack appellate jurisdiction.
The proper procedural vehicle to seek review of an interlocutory judgment that is not immediately appealable is an application for supervisory writ. La. C.C.P. art. 2201. “[T]he decision to convert an appeal to an application for super.visory writs is within the discretion of the appellate courts.” Stelluto v. Stelluto, 05-0074, p. 7 (La.6/29/05), 914 So.2d 34, 39.
This court has exercised its discretion to convert an appeal of an interlocutory judgment into an application for supervisory writ when the following two circumstances both are present:
1. The motion for appeal has been filed within the thirty-day time period allowed for the filing of an application for supervisory writs under Rule 4-3 of the Uniform Rules, Courts of Appeal.
2. When the circumstances indicate that an immediate decision of the issue sought to be appealed is necessary to ensure fundamental fairness and judicial efficiency, such as where reversal of the trial court’s decision would terminate the litigation.
Wadick v. General Heating & Air Conditioning, LLC, 14-0187, pp. 8-9 (La.App. 4 Cir. 7/23/14), 145 So.3d 586, 592-93. Both circumstances are present here.
l^Mr. Baxter’s appeal was filed within the thirty-day period allowed for filing a supervisory writ application. The ruling from which Mr. Baxter seeks review involves a child custody matter. Child custody matters generally require expedited consideration. See La. R.S. 13:1807 (providing that “[i]f a question of existence or exercise of jurisdiction under this Act is raised in a child custody proceeding, the question, upon request-of a party, shall be given priority on the calendar and handled expeditiously.”). Indeed, as noted, subsequent to the jurisdictional ruling at issue, Ms. Baxter commenced a custody proceeding in Canada. We thus convert Mr. Baxter’s appeal to an application for supervisory writ.
DISCUSSION
As noted at the outset, the dis-positive issue in this case is whether the trial court correctly determined that AB’s home state is Canada. Before reaching this issue, we address Ms. Baxter’s contention that this court has already determined, when it granted her writ application, that AB’s home state is Canada and that a Louisiana court thus lacks subject matter jurisdiction to hear any issues related to the child custody matter. Simply stated, her argument is that our prior writ disposition is law of the case on the issue of AB’s home state. Although we agree with Ms. Baxter’s contention that our prior writ disposition could be considered law of the case,[4] we find it appropriate to revisit the issue for two reasons. First, injjgour prior writ disposition, we did not analyze the jurisdictional issue. Second, when we considered the prior writ application, we *1167 did not have the benefit of a full record, including a transcript of the evidentiary hearing on the jurisdictional issue.
Before revisiting the issue, we first outline the law governing the jurisdictional issue — the UCCJEA. The UCCJEA, which is codified in La. R.S. 13:1801-1842, provides “the exclusive jurisdictional basis in state law for making a child custody determination by a Louisiana court.” 1 LA. CIV. L. TREATISE, CIVIL PROCEDURE § 2:5 (2d ed.2014).[5] The UCCJEA serves two purposes: (i) avoiding jurisdictional competition among the states; and (ii) promoting resolution of custody disputes by the forum deemed most likely to have the maximum amount of relevant information regarding the case. Wootton v. Wootton, 49,001, p. 5 (La.App. 2 Cir. 5/14/14), 138 So.3d 1253, 1256. Under the UCCJEA, one of the five scenarios under which a Louisiana court has subject matter jurisdiction to make an initial child custody determination is when the child’s home state is Louisiana. Id.[6] The term “home state” is defined in the UCCJEA as follows:
hs[T]he state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceed *1168 ing. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.
La. R.S. 13:1802(7)(a).
As noted, the trial court determined that AB’s home state is Canada. In support of his contention that the trial court’s determination that AB’s home state | uis Canada is erroneous, Mr. Baxter essentially asserts three legal arguments.[7] First, he contends that Ms. Baxter failed to comply with the Louisiana relocation statute, La. R.S. 9:355.1 et. seq. Second, he contends that Canada is not a “state” as defined under the UCCJEA, La. R.S. 13:1802(15). Third, he contends that under the Military Parent and Child Custody Procedure Act, La. R.S. 9:359.11, AB’s absence from Louisiana should be considered a temporary absence for purposes of the UCCJEA. We briefly explain why we find all three of Mr. Baxter’s legal arguments unpersuasive. We also explain why we find his related factual arguments unpersuasive.

i. The Louisiana relocation statute, La. R.S. 9:355.1 et. seq.

The Louisiana relocation statute is codified in La. R.S. 9:355.1 et. seq. Under the statute, the term “relocation” is defined as “a change in the principal residence of a child for a period of sixty days or more, but does not include a temporary absence from the principal residence.” La. R.S. 9:355.1(2). “Pursuant to La. R.S. 9:355.12, the relocating parent has the burden of proving that the proposed relocation is: (1) made in good faith; and (2) in the best interest of the child.” H.S.C. v. C.E.C, 05-1490, p. 3 (La.App. 4 Cir. 11/8/06), 944 So.2d 738, 740.
I isMr. Baxter argues that because his domicile is in Orleans Parish and because the parties did not expressly agree to relocate AB’s residence to Canada, Ms. Baxter was required to comply with the Louisiana relocation statute. Given Ms. Baxter’s failure to comply with the statute, he contends that AB has retained her principal residence in Orleans Parish.[8]
As the commentators have noted, “[g]o-ing hand-in-hand with the relocation issue are the jurisdictional issues raised by mobile parents. Before a court can even address the relocation issues, it must first determine if it has jurisdiction to do so.” Melinda H. Eizten, et al., Family Law: Parent and Child, 56 SMU L.Rev. 1707, 1730 (2003). Refusing to consider a relocation issue because Louisiana was not the child's home state, the court in Cancienne v. Cancienne, 02-378, p. 6 (La.App. 5 Cir. 10/29/02), 831 So.2d 484, 487-88, reasoned as follows:
Although the mother did not provide Mr. Cancienne with formal notice of the move, as set forth in LSA-R.S. 9:355.5, *1169 it is undisputed that Mr. Cancienne was aware of the move, even if he did not believe that it was permanent. If Mr. Cancienne had objected to the move in September of 1998, when the move took place and when Louisiana was the home state of the child, the parties could have litigated the issues regarding the move at that time in a Louisiana court. However, Mr. Cancienne did not object to the move until his child had lived in another jurisdiction for approximately one and one-half years. Considering the record before us, we find that Alabama is the home state of the child.[9]
LfiGiven its finding that Alabama was the child’s home state, the court in Cancienne did not consider the relocation issue.
In sum, subject matter jurisdiction over the child custody matter is a prerequisite to considering a relocation issue. Given our finding affirming the trial court’s ruling on the jurisdictional issue (that AB’s home state is Canada), Mr. Baxter’s reb-anee on the relocation statute is misplaced.

ii Status of Canada as a “state” for purposes of the UCCJEA

Mr. Baxter’s second contention is that Canada is not a “state” for purposes of the UCCJEA. In support, he cites the definition of the word “state” in the UC-CJEA, which is as follows: “a state of the United States, the District of Columbia, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States.” La. R.S. 13:1802(15). Rejecting a similar contention, the court in Fuller v. Fuller, 93 So.3d 961, 965-66 (Ala.Civ.App.2012), reasoned as follows:
[T]he mother was operating on the assumption that the UCCJEA appbes only to states of the United States. Indeed, the word “state” is defined in § 30-3B-102(15) as “[a] state of the United States, the District of Columbia, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States.” However, § 30-3B-105[10] governs the international application of the UCCJEA.
1171⅛ The court in Fuller thus found- the mother’s reliance solely on the definition of the word “state” misplaced.
As in Fuller, we find Mr. Baxter’s reliance solely on the definition of the word “state” in La. R.S. 13:1802(15) misplaced; the international application provision of the UCCJEA, La. R.S. 13:1805, governs its application and provides as follows:
*1170 A. A court of this state shall treat a foreign country as if it were a state of the United States for the purpose of applying Subparts A [SUBPART A. GENERAL • PROVISIONS] and B [SUBPART B. JURISDICTION] of this Part.
B. Except as otherwise provided in Subsection C[SUBPART C. ENFORCEMENT] of this Section, a child custody determination made in a foreign country under factual circumstances in substantial conformity with the jurisdictional standards of this Act shall be recognized and enforced under Subpart C of this Part.
C. A court of this state need not apply this Act if the child custody law of a foreign country violates fundamental principles of human rights.
La. R.S. 13:1805. Moreover, courts in other states have found that Canada is a “state” for purposes of the UCCJEA. See In re T.L.B., 272 P.3d 1148, 1157 (Colo.App.2012); see also Fuller, supra.[11]
In further support of his position that Canada is not a “state,” Mr. Baxter quotes the following language from Lindmeier v. Lindmeier, 03-1392, p. 4 (La.App. 3 Cir. 3/3/04), 867 So.2d 165, 168: “[c]learly, no foreign country is 11Rconsidered to be a ‘state’ under the provisions of the UCCJA. As Canada is, in fact, a foreign country, it does not fall under the definition of ‘state’ as contemplated by the act [the UCCJA].” Id. The Lindmeier case, however, was decided under the UCCJA; in contrast, this case must be decided under the UCCJEA. As explained above, the UCCJEA contains an international application provision, which the UCCJA did not contain.
Mr. Baxter also contends that the Lind-meier case is factually analogous and supports' a factual finding that AB’s home state is Louisiana. He emphasizes that the court in the Lindmeier case determined that despite the fact the child lived in Canada for sixteen months immediately before the suit was filed, the child’s home state was Louisiana. Contrary to Mr. Baxter’s contention, the circumstances presented in the Lindmeier case are not similar to the circumstances presented in the instant case. Indeed, the court in Lindmeier noted the following:
This is not a situation where a child has been moved from place to place or from state to state throughout her life. Lindsay’s [the child’s] contacts with Louisiana are not only significant, the majority of the contacts in her life have been in Louisiana, in Avoyelles Parish. The trial court found subject matter jurisdiction existed based on the significant connections with this state and that substantial evidence is available in this state concerning the child’s present or future care, protection, training, and personal relationships.
Lindmeier, 03-1392 at pp. 8-9, 867 So.2d at 170-71.[12]
*1171 l13Unlike the child in Lindmeier, AB has moved multiple times as a result of her father’s military employment. As noted, she has lived in Fort Erie, Ontario, Canada; New Orleans, Louisiana; Athens, Georgia; and Norfolk, Virginia. As the trial court pointed out, AB has not resided in Louisiana since August 2012; hence, a court in Canada has greater access than a court in Louisiana to information regarding AB’s care, protection, training, and personal relationships. Mr. Baxter’s reliance on the Lindmeier case is thus misplaced, factually and legally.

Hi. The Military Parent and Child Custody Procedure Act, La. R.S. 9:359.11

Mr. Baxter’s final contention is that a child’s absence from' his or her home state during a period of a parent’s military deployment should be considered a temporary absence under La. R.S. 9:359.11, such that the home state retains subject matter jurisdiction under the UCCJEA. Mr. Baxter points out that the trial court in this case issued an Interim Judgment on August 11, 2014, ordering daily telephone communication with AB. Based on this Interim Judgment, he contends that Ms. Baxter’s removal of the child from Louisiana while he was deployed in Afghanistan must be considered a temporary absence and that Louisiana must be found to have exclusive continuing jurisdiction over this child custody matter.
| anThe statutory provision on which Mr. Baxter relies, La. R.S. 9:359.11, provides as follows:
When a court of this state has issued a custody or visitation order, the absence of a child from this state during the deployment of a parent shall be a “temporary absence” for the purposes of the Uniform Child Custody Jurisdiction and Enforcement Act and this state shall retain exclusive continuing jurisdiction in accordance with the provisions of R.S. 13:1814. The deployment of a parent may not be used as a basis to assert inconvenience of the forum in accordance with the provisions of R.S. 13:1819.

Id.

Ms. Baxter counters that La. R.S. 9:359. il is inapposite. She points out that, at the time the August 11, 2014 Interim Judgment was issued, Mr. Baxter had returned from his deployment. She further points out that no custody order was issued before his deployment. She still further points out that it was never established that a Louisiana court had subject matter jurisdiction over the present custody matter; hence, it cannot logically be contended that a Louisiana court should retain exclusive continuing jurisdiction. She thus contends that the statutory provision is inapposite. We agree.
Although the statutory provision on which Mr. Baxter relies is inapposite, Mr. Baxter’s argument regarding the move to Canada being a temporary absence raises a factual issue that we must address. The *1172 issue, which the trial court did not expressly address in its reasons for judgment, is whether, under the definition of home state in the UCCJEA, the time that AB has lived in Canada since the August 2012 move can be considered a temporary absence from Louisiana.
_|220ur research revealed no Louisiana case addressing the meaning of the term “temporary absence” in the definition of home state in the UCCJEA. The statute itself does not define temporary absence. Certain circumstances undisputedly constitute a temporary absence, including “court ordered visitation, vacations, business trips, family emergencies, or to seek medical care.” 1 Sandra Morgan Little, CHILD CUSTODY AND VISITATION LAW AND PRACTICE § 4.12[5][a] (2014) (“CHILD CUSTODY AND VISITATION”). The more difficult situations, such as presented in this case, are when a child and one or both parents leave the state for an extended period for a temporary purpose, such as a military assignment. Id. In these situations, the courts in other states have applied various approaches to determine whether an absence from the claimed home state should be considered temporary, including the following:
• Examining the parent’s stated purpose for removing the child from the state, rather than the length of the absence or the parent’s actual purpose in removing the child.
• Considering whether the parent remaining in the claimed home state believed the absence to be merely temporary.
• Considering whether the absence was of indefinite duration.
• Considering the parent’s actual purpose in removing the child from the state.
• Examining the totality of the circumstances surrounding the absence.
• Applying a strict physical presence analysis.
CHILD CUSTODY AND VISITATION, § 4.12[5][a]. In this case, we find it unnecessary to select a particular approach to the problem of defining temporary absence. Regardless which of the above approaches is applied, the record supports a factual finding that Ms. Baxter’s August 2012 move to Canada with AB cannot be considered a temporary absence from Louisiana.
l2gln determining whether there was a temporary absence, “courts must examine not only whether the child was physically present in the state but also how and when the child came to and remained in that state.” Maqsudi v. Maqsudi, 363 N.J.Super. 53, 67, 830 A.2d 929, 937 (Ch.Div.2002). Evidence establishing the temporary nature of a child’s absence from a claimed home state includes the following:
• The purpose of the absence, such as a vacation, visitation with the other parent, a short-term work assignment, or caring for a sick relative.
• Any statements made by either party indicating the parties’ agreement that the child’s absence from the home state was intended to be temporary.
• The absent parent maintained employment in the claimed home state.
• The absent parent had previously made extended visits to the same location and returned to the home state after such visits.
• The absent parent did not obtain permanent housing while out-of-state, but instead stayed with friends or relatives, stayed in a hotel, lived in company housing or on a military base, sublet an apartment, or entered into a short-term lease.
• The absent parent did not obtain a new driver’s license or register a car out of state.
*1173 • The absent parent did not register to vote in the new state, and voted in the claimed home state by absentee ballot.
• The absent parent did not change the address on his or her passport.
• The absent parent maintained bank accounts in the home state.
• The absent parent paid taxes in the home state.
• The absent parent continued to own or rent housing in the claimed home state.
• The absent parent maintained close contact with Mends and family in the home state.
CHILD CUSTODY AND VISITATION § 4.12[5][f][i].
|2SThe evidence in the record reflects that a majority of the above factors establishing the temporary nature of a child’s absence from the claimed home state are lacking. Here, the purpose of the absence was not a short-term one, such as a visit or vacation. Other than Mr. Baxter’s own testimony, there was no evidence of any statement by either party that the absence was intended to be temporary.
Mr. Baxter’s testimony was that the parties always followed the same pattern each time he deployed.[13] The pattern was that Ms. Baxter and AB would go to Canada and stay there temporarily until he returned. When he returned, the parties would return to live together as a family in New Orleans.[14] The parties’ circumstances at the time of Mr. Baxter’s prior deployments, however, were different from their circumstances at the time of his 2012 •deployment.
The change in the parties’ circumstances from the prior deployments was that before 2012, AB was not in school. In 2012, AB was school-aged. The parties thus had to factor into their plans for Mr. Baxter’s 2012 deployment a determination of where AB would attend school. According to Ms. Baxter, one of the reasons that Mr. Baxter wanted them to move to Canada was because AB could attend excellent public schools in Canada; whereas, AB might have to attend private school in the United States. AB has been enrolled in school in Canada since August 2012. The length of time AB had been enrolled in school in Canada when Mr. Baxter commenced this proceeding strongly supports a finding that AB’s presence in Canada cannot be considered a temporary absence.
124For the years 2011 and 2012, the parties filed a joint federal tax return with the Internal Revenue Service using Mr. Baxter’s New Jersey home address. During their marriage, the parties routinely used Mr. Baxter’s New Jersey home address to receive mail there. Mr. Baxter still has a New Jersey driver’s license,. which has that address on it. Although his New Jersey driver’s license has expired, Mr. Baxter explained that he has a waiver due to his recent deployment. He has never had a Louisiana driver’s license. Ms. Baxter has a Canada driver’s license, which has the Fort Erie, Ontario, Canada address on it.[15]
*1174 The strongest connection the parties have to Louisiana is that they continue to own a fully furnished house in New Orleans.[16] The parties pay property taxes on the immovable property on which the New Orleans house is located. The parties annually claim the homestead exemption on that immovable property. The evidence, however, reflects that the New Orleans house is investment property. The parties lease the New Orleans house, fully furnished, to a third party on a year-to-year basis.
Since the 2012 move to Canada, neither one of the parties have returned to Louisiana. The lack of a physical presence of either one of the parties in Louisiana supports a finding that the absence was not a temporary one. The parties have no family in Louisiana. Ms. Baxter’s family is in Canada; Mr. Baxter’s family is in New Jersey. In sum, the evidence rebutting a finding that the absence from | ^Louisiana following the 2012 move to Canada was intended to be temporary is substantial.
Conversely, evidence rebutting a claim that the absence from the claimed home state was a temporary one includes the following:
• Statements made by either parent indicating an understanding that the move out-of-state was not necessarily temporary.
• The parent rented an apartment or purchased a home in the new state.
• The parent was issued a driver’s license in the new state, registered a car in the new state, and obtained car insurance in the new state.
• The children attend school in the new state or are registered for school.
• The parent has found employment in the new state or has been transferred to the new state for an indefinite period of time.
• The parent has enrolled in an educational program in the new state.
• The parent has applied for a professional or other business-related license in the new state, is studying to obtain such a license, or is fulfilling the prerequisites for obtaining such a license.
• The parent has joined clubs or organizations in the new state.
• The parent has lived in the new state previously and has an established support network there.
• The children are engaged in extracurricular activities in the new state.
• The children and parent have visited doctors and dentists in the new state.
CHILD CUSTODY AND VISITATION § .4.12[5][f][ii].
At the evidentiary hearing, Ms. Baxter presented evidence from several witnesses who testified that they attended the going away party that Ms. Baxter hosted shortly before the August 2012 move to Canada. The gist of the witnesses’ testimony was that Ms. Baxter informed them that her move to Canada was aj^permanent one. One of the witnesses, Kimbel Burt,[17] testified that Mr. Baxter told her that the parties’ New Orleans house was just an investment. Ms. Burt also testified that Mr. Baxter told her that he was happy that AB would be in Canada while he was in Afghanistan.
*1175 At the time of the hearing, Ms. Baxter and AB were living in the Canadian farm house that the parties purchased in February 2006. At the hearing, Ms. Baxter presented evidence, including photographs, regarding the renovations that she has made to the farm house. The photographs, as Ms. Baxter contends, establish that the farm house is in livable condition.
Although Ms. Baxter has obtained a Canada driver’s license, her vehicle is registered and insured in the United States. The reason her vehicle is registered and insured in the United States, Ms. Baxter explained, is because Mr. Baxter has refused to give her title to the vehicle. He has retained control over the registration and insurance of the vehicle.
Ms. Baxter is a school teacher. Before the parties were married, Ms. Baxter taught school in Buffalo, New York, which is a short distance across the border from Fort Erie, Ontario, Canada. During the parties’ marriage, Ms. Baxter worked outside the home for only one year; she worked at an Orleans Parish public school for the 2011-2012 school year. For the remainder of the time the parties were married, Ms. Baxter was a stay-home-mother. Ms. Baxter’s teaching certification has expired. The parties discussed the possibility of Ms. Baxter renewing her teaching certification during the time that she was living in Canada following the 2012 move. Mr. Baxter sent Ms. Baxter two emails, both dated August 3, 2013, regarding the recertification process in Canada and New York. Before the move, |27the parties discussed the possibility of Ms. Baxter teaching in either of those places.
Ms. Baxter previously resided in the same location in Canada that she is currently residing — Fort Erie, Ontario, Canada. She grew up in Fort Erie, and her family still resides there. She thus has an established support network there. According to Ms. Baxter, all of her family and friends reside within a ten mile radius of the parties’ Canada farm house. Ms. Baxter also testified that their Canada farm house is only seven hours away from Newark, New Jersey, where Mr. Baxter’s family resides.
Since August 2012, AB has been enrolled in school in Canada. AB also has been enrolled in extracurricular activities in Canada, including soccer and dancing. Mr. Baxter acknowledged at the hearing that he has visited AB’s school in Canada and that he has attended a meeting with her teacher. It is undisputed that Mr. Baxter has visited Ms. Baxter and AB in Canada since the 2012 move; however, the amount of time Mr. Baxter has spent in Canada since the 2012 move is disputed.
Both Ms. Baxter and AB have Canadian health insurance cards. They also both are covered under Mr'. Baxter’s health insurance. In order for Ms. Baxter and AB to obtain medical treatment while residing in Canada, Mr. Baxter changed the region of his health insurance coverage to the northeast region.
Summarizing, the evidence supporting a finding that AB’s absence from Louisiana following the 2012 move to Canada was a temporary one is minimal. Conversely, the evidence rebutting a finding that AB’s absence from Louisiana following the 2012 move was intended to be temporary is substantial. We thus find AB’s absence from Louisiana following the 2012 move does not fall within the | gambit of a temporary absence under the definition of home state in the UCCJEA. Accordingly, we find no error in the trial court’s finding that Canada is AB’s home state; and we affirm the trial court’s ruling sustaining Ms. Baxter’s declinatory exception of lack of subject matter jurisdiction over the child custody matter.

*1176
CONCLUSION

For the foregoing reasons, we convert Mr. Baxter’s appeal to an application for supervisory writ, grant his writ application, and deny the relief he requests.
APPEAL CONVERTED TO SUPERVISORY WRIT; WRIT GRANTED; RELIEF DENIED

. The initials of the minor child involved in this case, AB, are used in this opinion in order to protect her privacy.

. Although when she was born her parents lived in Canada, Ms. Baxter was born in Buffalo, New York. For this reason, her status in Canada is as a landed immigrant.

. La. C.C.P. art. 3941(A) provides that "[a]n action for an annulment of marriage or for a divorce shall be brought in a parish where either party is domiciled, or in the parish of the last matrimonial domicile.”

. As this court noted in Brown v. Serpas, 13-1679, p. 4 (La.App. 4 Cir. 7/16/14), 146 So.3d 748, 752, "[t]he law of the case doctrine refers to ‘(a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate court rulings at the trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal in the same case.’ Petition of Sewerage and Water Bd. of New Orleans, 278 So.2d 81, 83 (La.1973).” Id. Nonetheless, the law of the case doctrine " ‘is not an inflexible law; thus appellate courts are not absolutely bound thereby and may exercise discretion in application of the doctrine.' ” State v. Williams, 14-0630, p. 5 (La.App. 4 Cir. 12/18/14), 158 So.3d 107, 111 (quoting State v. McElveen, 10-0172, p. 24, n. 8 (La.App. 4 Cir. 9/28/11), 73 So.3d 1033, 1054).

. Generally, the Louisiana Code of Civil Procedure provides for jurisdiction in Louisiana over a minor’s status in a "proceeding to obtain the legal custody of a minor if he is domiciled in, or is in, this state." La. C.C.P. art. 10(A)(5). "The UCCJA previously functioned to graft a second tier of inquiry onto the question of jurisdiction over the custody of minor children. It imposed jurisdictional limits that required a court with general subject matter jurisdiction to decline to exercise it. Jurisdiction over the custody of minor children is now governed by the UCCJEA, which was enacted — and the UCCJA repealed-effective August 15, 2007.” Wootton, 49,001 at p. 5, 138 So.3d at 1256 (internal citations omitted).

. La. R.S. 13:1813 provides as follows:
A.Except as otherwise provided in R.S. 13:1816, a court of this state has jurisdiction to make an initial child custody determination only if:
(1)This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state, or had been the child's home state within twelve months before commencement of the proceeding and the child is absent from the state because he was required to leave or was evacuated due to an emergency or disaster declared under the provisions of R.S. 29:721 et seq., or declared by federal authority, and for an unforeseen reason resulting from the effects of such emergency or disaster was unable to return to this state for an extended period of time.
(2) A court of another state does not have jurisdiction or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under R.S. 13:1819 or 13:1820; and
(a) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.
(b) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.
(3) All courts having jurisdiction have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under R.S. 13:1819 or 13:1820; or
(4) No court of any other state would have jurisdiction under the criteria specified in Paragraph (1), (2), or (3) of this Subsection.
B. Subsection A of this Section is the exclusive jurisdictional basis for making a child custody determination by a court of this state.
C. Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.

. On appeal, Mr. Baxter asserts one assignment of error, which has two parts. The first part is his assertion that the trial court improperly considered Ontario or Canada to be a state for purposes of determining where the minor child's home state should be under the UCCJEA. The second part is his assertion that the trial court improperly failed to apply La. R.S. 9:359.11, which provides that a child’s absence from her home state during a period of a parent's military deployment be considered a “temporary absence,’’ resulting in Louisiana retaining continuing exclusive jurisdiction in accordance with the UCCJEA.

. Contrary to Mr. Baxter’s suggestion, the parents' or child’s legal residence or domicile are not determinative of the child’s home state under the UCCJEA. Although a parent neither gains nor loses a domicile or residence by serving in the military and a child’s legal residence is generally the same as the parents, "the determination of a child's home state ... is separate and distinct from the determination of either the parents’ or the child’s legal residence.” Consford v. Consford, 271 A.D.2d 106, 111-12, 711 N.Y.S.2d 199, 204-05 (2000).

. In the Cancienne case, the parties were married in Louisiana; and in June 1995, their child was born. In September 1998, Ms. Cancienne and the child moved to Mobile, Alabama; and they have continued to live there since that time. The record revealed that Mr. Cancienne was aware that his former wife and child had moved to Alabama; however, he contended that he did not believe the move was permanent.

. The court in Fuller, 93 So.3d at 966, noted that § 30-3B-105 governs the international application of the UCCJEA and provides as follows:
(a)A court of this state shall treat a foreign country as if it were a state of the United States for the purpose of applying this article [§§ 30-3B-101 through 30-3B-112] and Article 2 [§§ 30-3B-201 through 3-3B-210],
(b) Except as otherwise provided in subsection (c), a child custody determination made in a foreign country under factual circumstances in substantial conformity with the jurisdictional standards of this chapter [i.e., the UCCJEA] must be recognized and enforced under Article 3 [§§ 30-3B-301 through 30-3B-114],
(c) A court of this state need not apply this chapter if the child custody law of a foreign country violates fundamental principles of human rights.
Id. La. R.S. 13:1805 sets forth virtually the same international application provision.

. Although the international application provision has an exception that applies "if the child custody law of a foreign country violates fundamental principles of human rights,” the "exception applies only in the most egregious cases.” In re T.L.B., 272 P.3d at 1157. In the T.L.B. case, the court noted that "nothing in' the record here supports the conclusion that the exception applies to Canada.” Id. The same is true in the instant case.

. The court in Lindmeier further noted the following facts in support of its finding of "significant connections” to Louisiana:
[T]he testimony established that Lindsay was born in Lafayette, Louisiana, at a time when her parents were residing in Iberia Parish. According to the testimony, Mrs. Lindmeier is presently residing with Lindsay in the family home in Avoyelles Parish where she and Mr. Lindmeier resided from 1997 until the time they separated in April 2001. After the separation, Lindsay continued to live in the family home until Febru *1171 ary 2002, when she was taken to Canada by her father. Lindsay lived in Louisiana, therefore, for a period of four years and nine months before living in Canada with her father. The vast majority of the time she lived in Louisiana, she resided in Avo-yelles Parish. As the trial court correctly noted, Lindsay has spent 80% of her life in Louisiana. The majority of Lindsay’s family live in Louisiana, including her mother, a half-brother, a half-sister, her maternal grandparents, and numerous aunts, uncles, and cousins. Lindsay lived continuously with her mother and two siblings in Louisiana for 80% of her life. All her school records and medical records, except for the sixteen-month period she was in Canada, are located in Louisiana.
Lindmeier, 03-1392 at p. 8, 867 So.2d at 170.

. As noted, Ms. Baxter pointed out that when Mr. Baxter deployed to Japan, the parties did not follow this pattern because she was teaching school in New Orleans. She and AB thus stayed in New Orleans during Mr. Baxter’s deployment to Japan.

. Although the trial court found Mr. Baxter's testimony that "the parties’ absences were temporary and that they always returned to New Orleans between assignments” was credible, the trial court further found that by the time Mr. Baxter commenced this proceeding, Ms. Baxter had established her domicile in Fort Erie, Ontario, Canada.

.As to where the parties vote, Mr. Baxter testified that he was not registered to vote and that neither he nor Ms. Baxter voted during the entire time they were married. The only *1174 evidence regarding the parties’ passports was testimony that AB has two passports — one from the United States and one from Canada.

. During the pendency of this proceeding, Ms. Baxter has taken certain of her possessions from the New Orleans house.

. Ms. Burt taught school in New Orleans with Ms. Baxter during the 2011-12 school year.